SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellant,

v.

AMX, INTERNATIONAL, INC., et al., Defendants,

William B. Clark, Defendant-Appellee.

No. 92-1376.

United States Court of Appeals,

Fifth Circuit.

Nov. 12, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA, KING and DeMOSS, Circuit Judges.

PER CURIAM:

The instant case involves the enforcement of a disgorgement order entered by the district court on August 1, 1990. The Securities and Exchange Commission ("SEC") appeals an order from the district court denying certain requested relief the SEC claimed was necessary to obtain compliance with the disgorgement order. The SEC filed a Motion to Dispense With Oral Argument and Summarily Reverse the District Court's Decision, asserting that our recent holding in *Sec. Exch. Comm'n v. Huffman,* 996 F.2d 800 (5th Cir.1993), is dispositive of the issue presented. We agree, and we reverse and remand the cause for further proceedings.

I.

Appellee, William B. Clark ("Clark"), was prosecuted by the SEC for alleged violations of the antifraud and other provisions of the federal securities laws. After negotiations, during which Clark was represented by independent counsel, Clark and the SEC on October 26, 1989, entered into a "Consent and Undertaking of William B. Clark" (the "consent agreement") in which Clark consented to the entry of an agreed judgment, including (i) a permanent injunction against future violations of the securities laws alleged to have been violated, and (ii) a disgorgement order. This agreement was filed with the district court on February 2, 1990, and a final judgment of permanent injunction and

other equitable relief was entered against Clark on February 5, 1990.[1]

Although Clark agreed to the entry of a disgorgement order, he did not stipulate to a certain amount. Rather, the SEC and Clark agreed to negotiate further a disgorgement sum with the understanding that they could submit the controversy to the court if no such agreement could be reached.[2] When the parties failed to agree, the SEC motioned the district court to set a disgorgement amount, submitting documentation purportedly relating to Clark's unlawful profits in support of its request. On August 1, 1990, the district court entered an Order Setting Disgorgement Amount (the "Disgorgement Order"), requiring Clark to pay $218,610, plus post-judgment interest, into the registry of the court within ten days of entry of the order.

Clark allegedly failed to comply with the Disgorgement Order, and the SEC filed a motion to show cause why he should not be held in civil contempt. As neither Clark nor his attorney attended the October 31, 1990, show cause hearing, the district court placed Clark in civil contempt. The SEC then requested the court below to impose contempt sanctions upon Clark to coerce compliance with the Disgorgement Order, suggesting that Clark should be required to pay $125,000 of the amount due within a ninety-day period. If he failed to do so, the SEC asked that he be incarcerated until the payment was made. Clark responded that he was indigent and did not have the financial means to comply with the Disgorgement Order. As evidence of his financial inability, Clark provided the SEC and the district court with a financial statement and personal tax returns for the past three years. Both Clark and his wife submitted to depositions taken by the SEC. Clark also furnished sworn affidavits of "Indigency" and of "Financial Condition," dated January 31, 1991, and December 20, 1991, respectively, as further support for his claim of indigence.

The district court reviewed the various documents provided by Clark and found that "the only meaningful asset belonging to Clark that suggests an ability to comply with the disgorgement [order]

---

[1]Clark contends on appeal that the consent agreement filed with the district court was altered, since it did not include certain handwritten changes. However, we note that the document filed with the court below contained the changes in typewritten form.

[2]The consent agreement also provided that the SEC could "waive[ ] ... payment of any or all of such disgorgement amount ... based upon CLARK's demonstrated financial inability to make payment."

is his home, valued at $250,000, which he owns jointly free and clear with his wife." The court determined that this asset was exempt from collection under the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. § 3001 *et seq.* (the "Debt Collection Act"). It reasoned that Section 3014(a)(2)(A) of the Debt Collection Act permitted a defendant in an equitable proceeding—such as the one at bar—to "elect to take his available exemptions under Texas state law." *See* 28 U.S.C. § 3014(a)(2)(A). Since Texas law provides an exemption from debt collection with respect to a defendant's homestead,[3] and because Clark had no other demonstrable assets, the court concluded that Clark had satisfied his burden of showing financial inability to comply with the Disgorgement Order. In so holding, the court below intimated that it was unable to consider the value of the home in determining whether Clark had met his burden of showing financial inability.

## II.

We note, as a preliminary matter, that financial inability is a defense for failure to comply with a court-ordered disgorgement. *Donovan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 59 (2d Cir.1984). Since Clark invoked the defense of indigency, he had the burden of establishing his inability to pay. *Huffman,* 996 F.2d at 803. As discussed above, Clark and his wife provided numerous documents and deposition testimony in support of his position. The district court concluded that the assets other than Clark's home were insubstantial and that he had met his burden of demonstrating a lack of pecuniary means to comply with the disgorgement order. The integrity of that evidence and the trial court's conclusion about the non-homestead assets is not at issue on this appeal. Rather, the SEC challenges the district court's failure to consider Clark's residence as an asset in making its determinations as to whether Clark demonstrated financial inability.

A. Standard of Review

Normally, we review a district court's decision whether to grant equitable relief with respect to a disgorgement order for an abuse of discretion. *E.g., Commodities Futures Trading Comm'n v. American Metals Exch. Corp.,* 991 F.2d 71, 76 (3d Cir.1993). However, we read the district court's order to decline to exercise any discretion, believing that it had no authority to consider the home.

[3]*See* TEX.PROP.CODE ANN. § 41.002 (Vernon Supp.1993).

Its ruling in this regard is therefore purely a question of law, which we review *de novo,* applying the same standards as did the district court. *E.g., King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.,* 893 F.2d 1155, 1158 (10th Cir.) (holding that district court's determination as to whether subject matter jurisdiction exists is question of law, thus subject to plenary review, while decision whether to exercise that jurisdiction—if existent—is considered under abuse of discretion standard), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990); *cf. A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1039 (Fed.Cir.1992) (The "appellate court ... may set aside a discretionary decision if the decision rests on an erroneous interpretation of the law....").

B. Treatment of The Disgorgement Order

The only issue raised in this appeal by the SEC is whether a standing disgorgement order constitutes a "debt," thus subject to the provisions of the Debt Collection Act.[4] The district court implicitly held that it was when it concluded that the proceeding was subject to the Debt Collection Act. In an almost identical fact-setting, this court held that a disgorgement order does not amount to a "debt" for purposes of the Debt Collection Act. *See Huffman,* 996 F.2d at 803. Thus, we are bound by the prior panel's holding. We write this opinion separately, however, to address a question left unanswered by *Huffman.*

As this court notes in *Huffman,* the Debt Collection Act specifically excludes its application to the collection of any monies owed which are not debts. 28 U.S.C. § 3001(c). "Debt" is defined as:

> (A) an amount that is owing to the United States on account of a direct loan, or loan insured or guaranteed by the United States; or

---

[4]The appellee, Clark, attempts to enlarge the scope of the appeal by arguing that there is no evidence or insufficient evidence of any wrongdoing on his part to warrant the entry of the disgorgement order. Notwithstanding the fact that he did not file a cross-appeal to assert this point of error—*see, e.g., Ayers v. United States,* 750 F.2d 449, 457 (5th Cir.1985) (appellee must cross-appeal to preserve its challenge to error in lower court's opinion); *Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662, 668 (5th Cir.1983) (same)—Clark never challenged the order when it was entered. In fact, the order was entered as a consent decree as a result of a settlement between the parties and was signed by Clark's trial counsel on his behalf. Moreover, Clark's trial counsel filed several papers with the court after entry of the consent decree, asserting only his inability to pay—not raising any direct attack upon the disgorgement order as Clark argues here. For these reasons, the additional issues Clark attempts to advance are not properly before this Court.

(B) an amount that is owing to the United States on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States, but that is not owing under the terms of a contract originally entered into by only persons other than the United States; and includes any amount owing to the United States for the benefit of an Indian tribe or individual Indian, but excludes any amount to which the United States is entitled under Section 3011(a).[5]

28 U.S.C. § 3002(3)(A) and (B). Clark has not contended that Section 3002(3)(A) is relevant to this case, and there would be no basis for concluding that the provision has any application here. Accordingly, the proper focus is upon whether a disgorgement order falls within one of the terms defined in Section 3002(3)(B).

As the *Huffman* court previously decided, "disgorgement" does not really approximate any of the language used in Section 3002(3)(B). It comes closest to "restitution," but it is important to note that there are several significant differences for our purposes. In *Pierce v. Vision Invs., Inc.,* this court held that court-ordered "disgorgement" payments were in essence "an injunction in the public interest" rather than "a mere money judgment or debt." 779 F.2d 302, 307 (5th Cir.1986).[6] "Restitution" on the other hand, has the goal of making the aggrieved party whole. *First Penn Corp. v. Fed. Dep. Ins. Corp.,* 793 F.2d 270, 272 (10th Cir.1986) (The object of restitution is "to return the parties to the position that existed before the transaction occurred."). "The purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his ill-gotten gain." *Sec. Exch. Comm'n v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978). *See also Sec. Exch. Comm'n v. Commonwealth Chem. Sec., Inc.,* 574 F.2d 90, 102 (2d Cir.1978). Since disgorgement is not similar to those obligations specifically defined as "debts" under the Debt Collection Act, it is appropriate to conclude that a court order compelling disgorgement does not

[5]Section 3011(a) relates to surcharges for collection expenses incurred by the United States. 28 U.S.C. § 3011(a).

[6]*Pierce* involved the issue of whether a contempt sanction enforcing disgorgement of unlawful gains under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-1720, violated federal and state prohibitions on imprisonment for debt. *Pierce v. Vision Invs., Inc.,* 779 F.2d 302, 307 (5th Cir.1986). This Circuit concluded that disgorgement was not a "debt" because it is not a remedy at law; rather disgorgement is equitable in nature, constituting "an injunction in the public interest." *Id.* Thus, enforcement of the disgorgement order through contempt sanctions was permissible.

constitute a debt. *Huffman,* 996 F.2d at 803.

Although the facts presented here are virtually identical to those presented in *Huffman,* this court implied in *Huffman* that the result might have been different if the case had been decided on contract principles, noting that the "defendants made no admission of securities violations" and that "both sides assume that the amount ordered to be repaid here are a form of "disgorgement' rather than the simple settlement of a lawsuit." *See Huffman,* 996 F.2d at 801 n. 1. However, the court concluded that the parties failed to raise this issue. Since the argument was not properly before the court, it expressed no opinion about the merits. *Id.*

C. Effect of the Consent Agreement on the Disgorgement Order

In the instant case, however, the "contract principles" argument was arguably preserved. Since Clark is *pro se,* we must construe his allegations and briefs more permissively. *McCabe v. Arave,* 827 F.2d 634, 640 n. 6 (9th Cir.1987) (Courts are permitted to make allowances for *pro se* litigants and to read their papers carefully); *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989) (*pro se* litigant subject to less stringent standards than one represented by counsel). *Cf. Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (allegations in *pro se* complaint are to be construed liberally). Consequently, we address in this case the question left open in *Huffman,* namely, whether a disgorgement order entered as a result of a settlement between the parties, in which no liability is admitted or determined, operates as a "debt" for purposes of the Debt Collection Act.

We first examine the nature of a consent judgment. It is true that the underlying agreement between the SEC and Clark is in the nature of a settlement and has the elements of a contract. *See Local 93, Int'l Firefighters v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986). When an agreement between litigants is entered as a judgment of the court, however, it takes on an added significance. *Kaspar Wire Works, Inc. v. Leco Eng'g and Mach., Inc.,* 575 F.2d 530, 538-39 (5th Cir.1978). Thus, consent decrees "have attributes both of contracts and of judicial decrees." *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236-37 n. 10, 95 S.Ct. 926, 934 n. 10, 43 L.Ed.2d 148 (1975). As Professor Moore aptly described:

> The [consent] judgment is not, like the settlement agreement out of which it arose, a mere contract *inter partes.* The court is not properly a recorder of contracts; it is an organ of

government constituted to make judicial decisions, and when it has rendered a consent judgment it has made an adjudication.

1B JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 0.409[5], at III-151 (2d ed. 1993). *Accord Kaspar Wire Works, Inc.,* 575 F.2d at 538.

Although a consent decree is sometimes "construed for enforcement purposes as a contract," *ITT Continental,* 420 U.S. at 238, 95 S.Ct. at 935, where the consent judgment involves an injunction or similar equitable relief, "the injunction ... will be enforced as any injunction is enforced."  1B MOORE'S FEDERAL PRACTICE, ¶ 0.409[5], at III-149.  This court, in *Pierce,* held that a consent order directing, *inter alia,* the payment of money as a means of enforcing the federal Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-1720 (the "Interstate Land Act"), is an equitable decree and an injunction in the public interest.  779 F.2d at 307.  Thus, we concluded that the consent order was properly enforceable by the court's contempt powers, including incarceration until the court-ordered payments were made.  *Id.;*[7]  *cf. Usery v. Fisher,* 565 F.2d 137, 139 (10th Cir.1977) (holding that a consent judgment requiring payment of unpaid wages in a suit under the Fair Labor Standards Act was not a "debt" and was thus enforceable through criminal contempt).  This court has not seen fit to distinguish between disgorgement orders which are entered as the result of a consent decree and those resulting from a full adversary proceeding.  Nor do we in the case at bar.[8]

It should also be noted in the instant case that the district court determined the amount of disgorgement based upon proof presented by the SEC.  Although Clark agreed to disgorge certain gains alleged to have been procured as the result of fraudulent conduct, he did not stipulate as to the

---

[7]Specifically, we held that the enforcement of the order through the court's contempt powers was not in violation of prohibitions against placing debtors in prison. *See supra* note 6.  Although *Pierce* involved construction of the Interstate Land Act, this court noted that the consent agreement calling for the disgorgement of ill-gotten profits under that Act was similar to the disgorgement remedy available to enforce federal securities laws. *Pierce,* 779 F.2d at 308.

[8]This reasoning is consistent with the enforcement purposes of the equitable remedy of disgorgement.  As noted above, disgorgement is designed as a remedial measure for violations of the securities laws.  Its purpose is to "depriv[e] the wrongdoer of his ill-gotten gains and deter[ ] violations of the law." *Sec. Exch. Comm'n v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978);  *see also Commodities Futures Trading Comm'n v. British American Commodity Options Corp.,* 788 F.2d 92, 94 (2d Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986).  For that reason, a disgorgement order is considered to be in the form of a continuing injunction in the public interest. *Sec. Exch. Comm'n v. Huffman,* 996 F.2d 800, 803 (5th Cir.1993).

amount of such profits.  Thus, the *amount* of the disgorgement order was arrived at by adjudication rather than by agreement.  For these reasons, we hold that the underlying agreement supporting the disgorgement order did not transform the obligation into a "debt" for purposes of the Debt Collection Act.

### III.

Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion and with *Huffman.*  In doing so, we acknowledge that the district court has discretion to refuse to subject Clark's home to the disgorgement order;  it is not required to compel disgorgement of the residence to meet his obligation to the SEC.  *See, e.g., Huffman,* 996 F.2d at 803.  Rather, the only error is in the court's conclusion that it was *precluded* from considering the homestead in determining whether Clark had met his burden of establishing financial inability.  Each party shall bear its own costs of this appeal.

REVERSED and REMANDED.