SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

AMX, INTERNATIONAL, INC.
et al., Defendants.

Civ. No. 3:89–CV–2006–H.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 17, 1994.

Susan K. Strauss, S.E.C., Washington, DC, Stephen Webster, Spencer C. Barasch, Kristy D. Sheperd, U.S. S.E.C., Fort Worth, TX, for plaintiff S.E.C.

Charles Frederick Johnson, Charles F. Johnson & Associates, P.C., Dallas, TX, for defendant Peter G. Lund.

## *ORDER*

SANDERS, Chief Judge.

On December 10, 1993, the Court appointed United States Magistrate Judge Jane J. Boyle Special Master in this case pursuant to Fed.R.Civ.P. 53. *See,* also, 28 U.S.C. § 636(b)(2). On November 2, 1994, the Magistrate Judge as Special Master filed her Report styled "Findings, Conclusions and Recommendation of the United States Magistrate Judge", and by letter dated November 2, 1994, copy herewith filed, provided a copy of same to the parties.

The Court finds that the parties have had adequate notice of the Report. No objection to the Report has been filed.

The Court has reviewed the Report and is of the opinion that the Special Master's Findings of Fact (and Conclusions of Law) are correct. Accordingly, the Special Master's November 2, 1994 Report is **ADOPTED** and Judgment will be entered accordingly.

**SO ORDERED.**

## JUDGMENT

This Judgment is entered pursuant to the Court's Order dated November 17, 1994.

IT IS ORDERED, ADJUDGED and DE-CREED by the Court that Defendant William B. Clark disgorge as follows:

Not later than **December 31, 1994,** Defendant Clark must pay the amount of $50,-000.00 into the Registry of the Court.

Defendant Clark must pay into the Registry of the Court, beginning with the calendar year 1995, $25,000.00 per year until the entire disgorgement order, in the amount of $218,610.00 plus interest, is satisfied.

## FINDINGS, CONCLUSIONS AND REC-OMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

BOYLE, United States Magistrate Judge.

Pursuant to the District Court's Order of Reference filed December 10, 1993, and Rule 53 Fed.R.Civ.P., the undersigned United States Magistrate Judge has been appointed Special Master in this case. The Findings and Conclusions of the Magistrate Judge acting as Special Master, are as follows:

This case is before the undersigned on remand from the Court of Appeals for the Fifth Circuit. The issue to be determined is whether the District Court should use its discretion to require that defendant Clark's home be subject to its disgorgement order. For the reasons that follow, **I recommend** that Clark be ordered to disgorge his homestead in partial satisfaction of the disgorgement order. First, however, some background facts.

This action began when defendant, William B. Clark, ("Clark") was sued by the SEC for alleged violations of the Federal Securities Laws.[1] On October 26, 1989, Clark entered into a consent agreement whereby he agreed to the entry of an agreed judgment which included, *inter alia,* a disgorgement order. The district court thereafter issued an order setting the disgorgement amount at $218,-610.00, and requiring that Clark pay that amount plus post-judgment interest into the registry of the Court within ten days after the order was entered. When it appeared that Clark had failed to comply with the disgorgement order, the District Court, after Clark and his attorney failed to attend a show-cause hearing, placed Clark in civil contempt. The SEC thereafter moved the Court to impose contempt sanctions upon Clark to compel compliance with the disgorgement order. Clark's response was that he was indigent and could not afford to comply with the disgorgement order. As proof of his financial inability to pay, Clark provided the SEC and the District Court with a financial statement and tax returns. Clark and his wife also submitted to depositions taken by the SEC.

Based upon its review of the documents provided by Clark, the District Court found "the only meaningful asset belonging to Clark that suggested an ability to comply with the disgorgement [order] is his home, valued at $250,000.00,[2] which he owns jointly free and clear with his wife." However, the Court found that the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. § 3001 et seq. permitted the defendant to elect to take his state law exemptions. Because Texas law provided an exemption for a defendant's homestead, Clark was permitted to keep his homestead and the Court concluded that Clark had proven his inability to comply with the disgorgement order.

On appeal, the Fifth Circuit, relying in part on *SEC v. Huffman,* 996 F.2d 800 (5th Cir.1993), determined that the District Court had erred in finding that a disgorgement order is a debt pursuant to Federal Debt Collection Procedures Act, and consequently that Clark could claim his homestead exemption pursuant to the Debt Collection Act. The case was remanded for the District Court to determine, within its discretion,

---

1. The background facts set forth above are taken from the extensive background facts set forth in the Fifth Circuit's Opinion in *SEC v. AMX, Intern.,* 7 F.3d 71 (5th Cir.1993).

2. Clark valued the home at $250,000 in a financial statement dated June 20, 1990. (See Plaintiff's Response Regarding Inapplicability of State Law Property Exemptions to Equitable Disgorgement Orders, filed October 14, 1994, Attachment to Ex. 1)

whether to subject Clark's home to the disgorgement order. That analysis follows. First, however, because Clark has raised what appear to be new contentions regarding the value of his homestead, his financial ability to pay will be briefly revisited.[3]

▪ The appropriate standard of reviewing a claim of inability to pay a disgorgement order is now settled in the Fifth Circuit. "... [A] party bound by a consent order implicating public rights must satisfy the Court of his inability to pay by a preponderance of the evidence." *Huffman*, 996 F.2d at 803 n. 4. Preponderance of the evidence has been defined as "evidence that persuades you that the plaintiff's claim is more likely true than not true." Pattern Jury Instructions, Civil Cases, No. 2.20, United States Fifth Circuit District Judges Association (1992).

▪ In a pleading filed March 21, 1994,[4] Clark argued that the Securities and Exchange Commission was incorrect in its position that he owned his house free and clear. (See Clark's Response filed March 21, 1994, at 4). Specifically, Clark now argues that there are deeds of trust securing real estate promissory notes in the original principal amounts of $46,841.02, and $43,158.98, on record in Dallas County. Additionally, he states that there is another outstanding real estate promissory note in the amount of $94,-000.00, secured by a deed of trust. Although his argument is somewhat confusing, he appears to be contending that the house has been used to secure these real estate promissory notes. However, a review of the evidence he and the SEC have submitted previously on this issue, belies this assertion.

First, the SEC has submitted deposition testimony of both Clark and his wife in which, on November 16, 1990, they testified

that their house at 7028 Joyce Way was owned free and clear, having been paid off in 1976. (See Plaintiff's Response Regarding Inapplicability of State Law Property Exemptions to Equitable Disgorgement Orders filed October 14, 1994, Ex. 1 at 30; Ex. 2 at 38). Further undermining Clark's recent position that his home is encumbered is his own January 2, 1992, pleading[5] in which he states "The only asset that Mr. Clark has (jointly with his wife) is his homestead." (Clark's Jan. 2, 1992, response at 6). Later in the same pleading he states, "Mr. Clark would claim that after he takes his homestead and personal property exemptions, he is unable to produce any property for compliance with the designated order." *Id.* at 7.

Moreover, except for the $43,158.98 original principal amount on his home, as discussed below, the $46,841.02 and $94,000 amounts do not appear in any of Clark's previous documentation of his financial condition. (See Clark's Jan. 2, 1992, Response, Ex. A Affid. of Financial Condition; Joint Status Report filed February 1, 1991, Affid. of Indegency (sic) of William B. Clark; and Plaintiff's Response Regarding Inapplicability of State Law Property Exemptions to Equitable Disgorgement Order, filed October 14, 1994, attachment to Ex. 1, "Estimated Financial Statement of William B. Clark, June 20, 1990").

Further, in Clark's affidavit of Financial Condition submitted to the Court on January 2, 1992, in response to plaintiff's motion for contempt ("Clark's 1992 Affid."), Clark listed one item of indebtedness secured by his homestead. That was the original principal amount of $43,158.98. (Clark's Affid., Ex. A at 20). In that same portion of the affidavit, Clark wrote "?" to indicate the current principal balance. *Id.*[6]

---

**3.** The Fifth Circuit did not review the integrity of the evidence or the trial court's conclusions regarding the non-homestead assets. 7 F.3d at 73 Therefore, the issue of Clark's financial ability to pay will only be revisited with respect to the new facts he raises regarding his home.

**4.** This pleading is titled "Response and Brief to the United States Magistrate Judge" and was submitted in response to the undersigned's invitation for the parties to submit additional briefing on the issue of the homestead exemption.

**5.** Response and Brief to Plaintiff's Motion and Brief in Support of Contempt Sanctions. ("Clark's Jan. 2, 1992, response").

**6.** The creditor on that note was Janco Trust. Janco Trust has a mailing address of 7028 Joyce Way, Dallas, Texas 75225, defendant Clark's home address. Janco Trust appears to be property of defendant Clark's wife, Janet Johnson Clark. (Clark's January 2, 1992, Response Ex. C.).

In sum, none of Clark's previous statements regarding his financial condition support his present position that his home is encumbered by debt. Because of this, he has failed to meet his burden of proving that he is financially unable to pay the disgorgement amount through the use of his home. Having decided this issue, the Court now turns to the question of whether the District Court should use its discretion to subject Clark's home to the disgorgement order. For the reasons that follow, the undersigned recommends that Clark's home be subject to the disgorgement order. The law supporting this recommendation follows.

■ In deciding whether Clark should be permitted to claim the state law homestead exemption, it is helpful to review the nature of the consent and disgorgement order by which he finds himself bound. "The entry of a consent decree [7] is more than a matter of agreement among the litigants." *League of United Latin Amer. Citizens v. Clements*, 999 F.2d 831, 845 (5th Cir.1993). A consent decree is a "judicial act." *Id.*, citing *United States v. Swift & Co.*, 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932).

■ Disgorgement has been defined as "an equitable remedy designed to deprive defendants of all gains flowing from their wrong, rather than to compensate the victims of the fraud. The purpose of disgorgement is to deter violations by making them unprofitable ..." *Thomas C. Mira Comment, The Measure of Disgorgement in SEC Enforcement Actions Against Insider Traders Under Rule 10B–5*, 34 Cath.U.L.Rev. 445, (1985) n. 1 citing 11 A.E. Gadsby Business Organizations, Pt. 1A @ 9.03(2), 9–57 two 958 (1984). An integral element of the equitable remedy of disgorgement is its deterrent affect. The Second Circuit recognized this deterrent effect in *SEC v. Manor Nursing Centers, Inc.* in which the Court noted, "[the] deterrent effect of an SEC enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits." 458 F.2d 1082, 1104 (2nd Cir.1972). In fixing a disgorgement

amount, the Court may not use its equitable power to inflict a penalty, rather the disgorgement must be "causally related to the wrongdoing." *SEC v. Thomas James Associates, Inc.*, 738 F.Supp. 88, 94 (W.D.N.Y. 1990) citing *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1230 (D.C.Cir.1989).

■ A securities violator may not avoid his responsibility to turn over his ill-gotten gains by claiming that he is no longer in possession of the funds due to subsequent unsuccessful investments or other types of discretionary spending. *Thomas James*, 738 F.Supp. at 95, citing *SEC v. Shapiro*, 494 F.2d 1301, 1309 (2nd Cir.1974). Nor may a defendant argue that he is incapable of paying because a payment would result in a diminution of his income or his standard of living. *SEC v. Musella*, 818 F.Supp. 600, 602 (S.D.N.Y.1993). Further, an inability to pay the full disgorgement amount at one time does not absolve a defendant from responsibility to pay some portion of the sum or payments over time. *Id.* at 609, n. 5.

The disgorgement order in this case requires Clark to pay $218,610.00, plus postjudgment interest into the registry of the Court. He has yet to pay one cent of this disgorgement. Clark is by no means destitute, nor would requiring him to obtain a loan or sell his house to obtain cash render him destitute. In his affidavit of indigency filed as an exhibit with a joint status report on February 1, 1991, Clark stated that he and his wife receive social security income and trust income totaling approximately $1800.00 per month. (Joint Status Report filed February 1, 1991, Ex. C). Approximately ten days prior to the filing of the SEC's lawsuit, Clark transferred approximately $25,000.00 from one of his corporate accounts to his wife. (Plaintiff's Brief in Support of Contempt Sanctions, filed December 21, 1991, at 4).

Finally, Clark was given several months to attempt to negotiate a settlement with the SEC regarding the disgorgement amount. No settlement was agreed to and Clark has

7. "With the procedural merger of law and equity" in the federal and most state courts under the Rules of Civil Procedure, the term "judgment" has generally replaced "decree"." Black's Law Dictionary, (5th Ed.1979).

yet to indicate to the Court that he is able to pay any amount of the disgorgement amount. Moreover, his recent questionable change of position on the financial status of his home renders his consistent claims of financial inability to pay suspect. To allow Clark to walk away from the Court's disgorgement order would, in effect, render the disgorgement order and the SEC's enforcement powers meaningless. Because the credible evidence establishes that Clark owns his home valued at $250,000.00 free and clear and has failed to pay or attempt to pay any amount toward the disgorgement order, it is **RECOMMENDED** that his home be considered by the Court in determining his financial ability to pay. If the Court considers his home as an asset subject to the disgorgement order, then it cannot be said that Clark cannot pay a portion of the order at this time. By selling his home or obtaining a loan on his home Clark could begin to pay the equitable remedy ordered by the Court in this case.

For the foregoing reasons, it is **RECOMMENDED** that Clark, no later than December 31, 1994, pay the amount of $50,000.00 to the registry of the Court.

It is further **RECOMMENDED** that Clark thereafter pay the amount of $25,-000.00 per year toward the disgorgement amount until the disgorgement order is satisfied.

Signed this 2nd day of November, 1994.