# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 5, 2013

No. 12-11045

Lyle W. Cayce
Clerk

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff–Appellee,

versus

JASON A. HALEK,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CV-1719

Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

The Securities and Exchange Commission ("SEC") brought a civil enforce-ment action against Jason Halek and his two companies, CBO Energy, Inc., and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11045

Halek Energy, LLC.[1]  The defendants consented to an interlocutory judgment enjoining them from future violations but leaving open the amount of penalties and disgorgement.  After the parties failed to settle that remaining issue, the court held Halek and the energy companies liable for disgorgement.  Halek appeals the disgorgement order, the decision to reopen the case after administrative closure, and the entry of final judgment based in part on the terms in Halek's consent to the injunction.

I.

The SEC sued Halek and his two energy companies for allegedly making material misstatements in connection with the offer and sale of securities, in violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  In addition, the SEC alleged that the parties offered and sold unregistered securities in violation of Section 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. § 77e(a) and (c).

Without admitting or denying the allegations, the defendants entered consent agreements for an injunction against future violations, including a concession to pay disgorgement and penalties as determined by a court on the SEC's motion.  Halek was also precluded from challenging, in relation to the motion for disgorgement, either the complaint's allegations or the validity of the consent agreement.

The court ordered the parties to mediate disgorgement and civil penalties. A settlement was reached "subject to approval by the SEC Commissioners of the proposed settlement terms" and "subject to the parties' agreement on final settlement documents and the form of proposed judgment."  The day after the resolu-

---

[1] The SEC also named Christopher Wilbourn, the President of CBO Energy.  He is not involved in this appeal, nor was he found jointly and severally liable for the disgorgement.

tion summary was signed, the court ordered the case administratively closed, adding that "should further proceedings become necessary or desirable, any party or the Court may initiate such further proceedings in the same manner as if this Order had not been entered."

Several months later, the SEC moved to reopen the case to determine the amount of disgorgement, penalty interest, and civil penalties. The SEC explained that the sworn financial statements submitted by the defendants "were not reliable such that the Commission staff could recommend to the Commission that the Commission accept the representations and waive payment owed." Halek disputed the motion to reopen, contending that the SEC had failed to uphold the settlement terms and had not specified how the submitted financial information was insufficient.

Before it would rule on the motion, the district court instructed the SEC to provide an itemized list of the financial information needed and told Halek to produce the requested documentation. The parties filed a joint status report at the court's request, stating:

> Halek submitted further sworn statements of financial condition and other financial documentation to the Commission as ordered, and the parties met in person to confer on March 21. The parties remain at an impasse. In general terms, the Commission's position remains that Mr. Halek is unable to meet the conditions for settlement under the terms proposed at mediation. If the Court desires specific information regarding the parties' settlement negotiations or the reasons for the impasse, the parties will be glad to provide it. However, due to the confidential nature of the discussions, the parties are simply reporting that a settlement is not possible between the parties at this time.
>
> Therefore, the Commission respectfully re-urges its Motion for Disgorgement as to Halek . . . and moves the Court to determine the appropriate amount of disgorgement, if any, owed by Mr. Halek (the sole remaining issue in the litigation).

(Footnote and citation omitted.)

3

No. 12-11045

The district court reopened the case as to Halek only and referred it to a magistrate judge for a settlement conference.[2] When the parties failed to settle, the district court entered findings of fact that Halek, along with Halek Energy and CBO Energy, had received $21,452,137 in ill-gotten profits, had jointly participated in the profits, had commingled the funds, and had collectively spent the funds as a single economic unit. As a result, the court held Halek and the two companies jointly and severally liable for disgorgement of $21,452,137 and pre-judgment interest of $5,048,920.17. Halek was ordered to pay a $50,000 civil penalty.

II.

Halek claims that the court procedurally erred in reopening the case. An administrative closure is more akin to a stay than a dismissal.[3] Unlike a stay however, an administratively closed case is not counted as active although it remains on the docket, *Mire*, 389 F.3d at 167; it "is merely a case-management tool used by district court judges to obtain an accurate count of active cases." *CitiFinancial*, 453 F.3d at 250. Recognizing that "[d]istrict court judges have broad discretion in managing their own dockets," *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010), we review administrative-closure determinations for abuse of discretion.[4]

Halek argues that the SEC was required to move forward with the settlement agreement despite its claim that he had provided insufficient financial doc-

---

[2] Final judgments were entered against CBO Energy and Halek Energy and are not at issue in this appeal.

[3] *Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004); *see also CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 250–51 (5th Cir. 2006).

[4] *See Ali v. Quarterman*, 607 F.3d 1046, 1049 (5th Cir. 2010); *United States v. Texas*, 457 F.3d 472, 476 (5th Cir. 2006).

umentation.  Halek explains that he made a good-faith effort, and any failure to comply was because the SEC failed to clarify what information it needed.  Even if the SEC failed sufficiently to enumerate what information it needed, however, it was not required to accept the proposed settlement, which was left subject to the parties' agreement on final settlement documents.  Considering the impasse over whether Halek had submitted sufficient documentation, it is evident there was no agreement.  Furthermore, the order of administrative closure explicitly stated that any party could initiate further proceedings as necessary.  It was not an abuse of discretion for the court to return the case to the active docket to seek resolution of the disgorgement issue.

## III.

Halek contends the district court should not have considered his stipulated consent agreement when entering the final judgment.  He categorizes his consent to interlocutory judgment as part of the same settlement agreement as the failed disgorgement negotiations; he urges that when the SEC refused to settle on disgorgement, it also lost the right to rely on the terms of the consent agreement.

Consent agreements such as the one here are "in the nature of a settlement and [have] the elements of a contract."  *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993).  We review their interpretation *de novo*.[5]  The district court did not err in relying on Halek's consent agreement, because it was not contingent on the parties' agreement as to the amount of disgorgement.  Instead, the consent explicitly left open the amount of disgorgement for the Court to determine "upon motion of the Commission[.]"  Halek's consent also explicitly stated that, for purposes of determining disgorgement, he would not challenge the con-

---

[5] *See Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 912 (5th Cir. 2013) (noting that settlement agreements are contracts and are reviewed *de novo*).

No. 12-11045

sent and had received no promises in exchange for executing it.

IV.

Halek's main issue on appeal presents the question whether the district court erred in ordering over $21 million in disgorgement. Specifically, he claims that the amount is incorrect because (1) he should not have been held jointly and severally liable with the companies; (2) he did not personally receive the entire sum of the profits; (3) the court did not subtract the amount paid to the fraud victims; and (4) the SEC did not follow its rules and procedures for disgorgement.

The purpose of disgorgement is not to make victims whole but to prevent the wrongdoer's enrichment from ill-gotten profits. *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). Disgorgement is "limited to property causally related to the wrongdoing," but it need only be a "reasonable approximation" of those profits.[6] District courts have "broad discretion in fashioning the equitable remedy of a disgorgement order," *Huffman*, 996 F.2d at 803, and we review disgorgement orders for abuse of discretion, *AMX, Int'l*, 7 F.3d at 73. We review pure questions of law *de novo*, *id.*, and findings of fact will stand unless clearly erroneous, FED R. CIV. P. 52(a)(6).

First, we address whether the court erred in holding Halek, CBO Energy, and Halek Energy jointly and severally liable. "[J]oint and several liability is appropriate in securities cases where, as here, individuals collaborate or have close relationships in engaging in illegal conduct."[7] The court found that Halek and the two companies "jointly participated in ill-gotten profits received from

---

[6] *Allstate Ins. Co. v. Receivable Fin. Co.*, L.L.C., 501 F.3d 398, 413 (5th Cir. 2007) (citing *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)).

[7] *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 747 (5th Cir. 2004) (per curiam) (citing *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir.1997)).

investors.  The defendants commingled investor funds in bank accounts and collectively spent the funds as a single economic unit."  Based on a finding that they acted in concert, the court drew the legal conclusion that Halek and the entity defendants were jointly and severally liable for the full amount of ill-gotten profits.

Halek disputes the underlying factual findings, arguing that there was no evidence of commingling or action as a single economic unit.  To the contrary, those findings were not clear error, because they were "plausible in light of the record as a whole."  *United States v. Morrison*, 713 F.3d 271, 279 (5th Cir. 2013) (internal quotation and citation omitted).

The court relied on the declaration of the SEC's forensic accountant, who analyzed the financial records of the three defendants and determined that the investors' funds were commingled among the defendants' bank accounts and treated as one economic unit.  The accountant also noted that Halek had signature authority to receive and disburse funds from all the relevant accounts.  Her report concluded that "[b]ased on the large volume of transactions, the commingled uses of funds, and the inaccuracy of accounting records and financial statements," she would be unable to divide the profits among the parties.

In addition, the allegations in the underlying complaint, which the court may accept as true according to Halek's consent, stated that Halek owned and operated both energy companies; he controlled the websites that solicited investors; and the companies commingled funds to pay for costs across several projects.  Finally, both Halek Energy and CBO Energy admitted, in the motion to enter agreed final judgment, that they acted in concert with Halek and commingled and collectively spent the funds as a single economic unit.  They agreed that it would be "nearly impossible" to determine what amount of profits to attribute to each defendant.

Halek also maintains that the amount of disgorgement was erroneous,

because he received only $473,502.52 from the energy companies.[8]  The SEC carries the initial burden to prove that the amount of disgorgement is a reasonable approximation of profits connected to the violation.  *See Allstate Ins.*, 501 F.3d at 413.  Halek admits that the burden then shifts to the defendant to prove that the amount is unreasonable.  *See Hughes Capital*, 124 F.3d at 455; *First City Fin.*, 890 F.2d at 1232.

Halek failed to show that $21,452,137 was not a reasonable approximation of Halek and the energy companies' ill-gotten profits; thus, we cannot say that the district court abused its discretion, *see Huffman* 996 F.2d at 803.  Halek's sole evidence is his unsubstantiated claim that he received only $473,502.52, but he never disputes that the scheme reaped $21 million in profits.  The fact that Halek may have directed only a small percentage into his personal accounts does not make the total profit approximation unreasonable.[9]  Halek, CBO Energy, and Halek Energy had the full benefit of the $21,452,137 in ill-gotten profits; how it was distributed and spent "has no relevance to the disgorgement calculation."  *SEC v. JT Wallenbrock & Assoc.*, 440 F.3d 1109, 1116 (9th Cir. 2006).

Finally, Halek contends that the district court erred in failing to subtract the amount already paid to fraud victims from Halek Energy's bankruptcy settlement.  Although a court may consider settlement payments when calculating disgorgement, *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996), Halek failed to show what payments were actually made to the victims.  He sub-

---

[8] Separately, Halek, using SEC Rule of Practice 630(a),17 C.F.R. § 201.630(a), contends that the SEC should have been estopped from requesting disgorgement beyond his ability to pay.  Those rules, however, govern only administrative proceedings before the SEC.  17 C.F.R. § 201.100(a).

[9] *See United Energy*, 88 F. App'x at 746 (citing *SEC v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C.Cir. 2000)) ("[A] person remains unjustly enriched by what was illegally received, whether he retains the proceeds of his wrongdoing."); *see also SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1098 (9th Cir. 2010) ("A person who controls the distribution of illegally obtained funds is liable for the funds he or she dissipated as well as the funds he or she retained.").

No. 12-11045

mitted a declaration that he transferred assets to the victims in the bankruptcy settlement, but the supporting settlement agreement showed only that he agreed to assign an unvalued amount of mineral interests to Halek Energy. The court did not abuse its discretion in fashioning the remedy.[10]

AFFIRMED.

---

[10] In addition, the SEC declared that it had subtracted from the disgorgement calculation an unspecified amount that had already been refunded to some investors.