# United States Court of Appeals for the Fifth Circuit

---

No. 23-50327

---

United States Court of Appeals
Fifth Circuit

**FILED**

September 16, 2024

Lyle W. Cayce
Clerk

Securities and Exchange Commission,

*Plaintiff—Appellee*,

*versus*

William Andrew Stack,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-51

---

Before Jones, Haynes, and Douglas, *Circuit Judges*.

Per Curiam:[*]

In this civil enforcement action, the Securities and Exchange Commission ("SEC") alleged that William S. Marshall (an un-charged person) perpetrated investor fraud in a gold mine penny-stock venture and enlisted Appellant William Andrew Stack to raise $333,110 from more than fifty-five investors in the scheme. Stack kept $75,000 for himself for personal

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

expenses and caused the corporation to transfer $16,500 to his wife and the rest to Marshall. The court ordered Stack to disgorge the full $333,110 plus prejudgment interest. In sum, the district court held him liable for funds he never received or benefited from.

Stack appeals and contends that the district court erred in imposing liability on him for the full amount of the proceeds rather than individual liability for the amount he transferred to himself. We REVERSE and REMAND.

## BACKGROUND

### A. Factual Background

In January 2021, the SEC filed a complaint against Stack, a Dallas, Texas securities lawyer, alleging that he violated, and aided and abetted the violation of, various antifraud and registration provisions of federal securities laws.[1] The complaint concerns Preston Royalty Corp., a "penny stock issuer that purported to provide royalty financing to gold mining operations." In 2015, an undisclosed individual contacted Stack and stated that he and Marshall wanted Preston Royalty to invest in the royalty streams of a gold mine Marshall owned. Marshall subsequently asked Stack to become Preston Royalty's chief executive officer.

Stack became the chief executive officer, president, and treasurer of Preston Royalty. But Stack was "CEO in name only." From April to September 2016, Stack and Marshall engaged in a fraudulent scheme for the

---

[1] Specifically, the complaint alleges violations of sections 5(a), 5(c), and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a), as well as section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. For the purposes of the disgorgement order at issue here, Stack agreed that the allegations of the complaint "shall be accepted as and deemed true."

sale of unregistered securities and made fraudulent statements to investors. Stack acted at the behest of Marshall, who was Preston Royalty's undisclosed control person. In August 2016, Stack complained to Marshall, "You have told me that you're bringing in $50,000+ per week for months. I'm not sure where that money has gone, or if it in fact has really come in. I only know what I'm told. . . . I am CEO of Preston and I have no idea what is ever being done." Although Marshall did not hold a formal position at Preston Royalty, Stack reported to him.

Marshall initially told Stack that Preston Royalty planned to issue $5 million in corporate bonds and use the proceeds to invest in gold mine royalty streams, specifically one derived from Marshall's gold mine. Pending the close of such offering, Marshall claimed that Preston Royalty would seek to raise money through a private placement of its stock to investors. Stack opened two bank accounts in Preston Royalty's name for the expected private placement. Stack then began raising revenue for Preston Royalty using a "Private Offering Memorandum" and "Preston Royalty Business Plan."

The documents contained numerous false statements, including that Stack was Preston Royalty's founder and that "*[a]ll funds* will be allocated towards the acquisition of permitted and operating alluvial gold mines or properties considered to be in near term production." The documents also made "various misrepresentations regarding [Preston Royalty's] operations and prospects."

Ultimately, Preston Royalty "raised over $333,000 from more than fifty-five retail investors around the country in a private placement of Preston Corp.'s common stock." According to the allegations in the complaint, Stack "knew or recklessly disregarded" that Preston Royalty was issuing false and misleading statements and misappropriating funds.

As signatory to Preston Royalty's corporate bank account, Stack caused Preston Royalty to wire approximately $229,500 of primarily investor funds to Marshall's gold mining company. Stack also withdrew more than $12,000 in cash and transferred $63,400 to his nominal business entity's bank account. Finally, he transferred $16,500 to his wife.

## B. Procedural Background

On January 15, 2021, the SEC filed its complaint. The district court denied Stack's motion to dismiss. On September 16, 2022, the parties filed an Agreed Motion to Enter Partial Judgment, and the district court entered a partial judgment permanently enjoining Stack from future securities violations, and imposing on him for five years an officer-and-director bar, a penny stock bar, and a legal services Regulation D bar. The parties agreed that the district court would later determine "whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty . . . and, if so, the amount(s) of the disgorgement and/or civil penalty."

Upon the SEC's motion, the magistrate judge issued a report recommending, among other relief, that the district court should impose a disgorgement award of $333,110 plus prejudgment interest. The magistrate judge found that joint and several liability should be imposed on Stack for the entirety of Preston's proceeds rather than just the amount he kept. The district court adopted the order in full and entered final judgment on March 10, 2023. Stack filed a timely appeal.

### STANDARD OF REVIEW

This court reviews disgorgement orders for abuse of discretion. *SEC v. World Tree Fin., LLC*, 43 F.4th 448, 459 (5th Cir. 2022). Pure questions of law are reviewed de novo. *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993). Findings of fact are reviewed for clear error. *See* Fed. R. Civ.

P. 52(a)(6). This case was decided largely on agreed facts contained in the Consent Judgment, which are to be taken as true.

## DISCUSSION

The only issue on appeal is whether the district court erred in ordering disgorgement of the entire alleged loss against Stack. In 2020, the Supreme Court made clear that disgorgement is an "equitable remedy" authorized by 15 U.S.C. § 78u(d)(5) ("The [SEC] may seek, and any Federal Court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."). *See Liu v. SEC*, 591 U.S. 71, 74–75, 140 S. Ct. 1936, 1940 (2020). The Court in *Liu* cautioned courts against expanding disgorgement in ways that "test the bounds of equity practice," such as "by . . . imposing joint-and-several disgorgement liability, and declining to deduct even legitimate expenses from the receipts of fraud." *Id.* at 85, 140 S. Ct. at 1946. Although *Liu* ultimately countenanced the possibility of joint and several disgorgement liability in SEC cases, the Court several times expressed concern that the application of joint and several liability to disgorgement could turn the remedy into a penalty that is "at odds" with traditional equitable principles requiring "individual liability for wrongful profits." *See, e.g.*, *id.* at 90, 140 S. Ct. at 1949.

In response to Stack's arguments against liability, the SEC originally contended either that the district court correctly ordered disgorgement of the entire loss amount based on Stack's *own* violations or that the order was a proper assessment of joint and several liability. We reject the SEC's former contention but find the latter was waived.

First, the SEC's contention that the district court imposed *individual* liability on Stack solely for his violations is wrong. The magistrate judge stated, "Stack should be held *jointly liable* for the full amount of money raised

in the scheme on behalf of Preston" (emphasis added). And the district court ordered disgorgement based on joint and several liability.

Regardless, the record here does not justify holding Stack liable individually for the entire loss because of *his* violations. Stack's degree of involvement was no greater than that of the minor defendants in *SEC v. Blackburn*, 15 F.4th 676 (5th Cir. 2021). In that case, on analogous facts, this court "did not impose joint-and-several liability but individually assessed each defendant's gain" from the illegal conduct. *Id.* at 678. Here, by the SEC's own allegations, Marshall, not Stack, was the true control person of Preston Royalty. Further, as the SEC alleged, Stack did "Marshall's bidding," and "ha[d] no idea what [was] ever being done." The complaint quotes Stack as complaining to Marshall, "You have told me that you're bringing in $50,000+ per week for months. I'm not sure where that money has gone, or if it in fact has really come in. I only know what I'm told. . . . I am CEO of Preston and I have no idea what is ever being done." Stack correctly notes that all these facts must be taken as true under the terms of the parties' Consent Judgment.

It is also significant that, unlike the spouses' finances at issue in *Liu*, Stack's and Marshall's finances were not commingled. *See Liu v. SEC*, 591 U.S. 71, 91, 140 S. Ct. 1936, 1949 (2020). And unlike in *SEC v. World Tree Fin., LLC*, the district court did not order Stack to disgorge funds he transferred to Preston Royalty, the corporation of which he was chief executive officer. *See* 43 F.4th 448, 459 (5th Cir. 2022). Rather, the district court imposed joint and several liability on Stack for funds he transferred *from* Preston Royalty to Marshall. Holding Stack liable for funds he did not keep or benefit from does not constitute "a reasonable approximation of a defendant's unjust enrichment," as required by *Liu* and our precedent. *See SEC v. Hallam*, 42 F.4th 316, 341 (5th Cir. 2022). Under all of these

circumstances, disgorgement would be "unjust." *See Liu*, 491 U.S. at 91, 140 S. Ct. at 1949.

SEC's second argument, purportedly relying on joint-and-several liability, was expressed in its brief. However, at oral argument counsel expressly disclaimed reliance on that theory. Counsel stated, "This is not a joint and several award because the Commission . . . if you look back, our initial remedies motion to the magistrate judge, we didn't argue that he should be held jointly and severally liable with Marshall." In response to a direct question from this court whether "joint and several is not on the page," counsel then agreed, "Yes, your honor, there is no codefendant in this case, so there is no one he could be held jointly and severally liable with." Later, to be exact, counsel argued that this court could uphold the disgorgement award "on any basis supported by the record." But then counsel contended that the lower court in fact issued a judgment that held Stack liable only for his own misconduct and not on a joint-and-several basis. As we have noted above, this contention is belied by the record.

In sum, counsel affirmatively waived SEC's reliance on the theory of joint and several liability, so we need not discuss that theory, and the record and precedent contradict the district court's assessment of disgorgement far exceeding the amount by which Stack himself was unjustly enriched.

One more issue remains to be mentioned. The parties do not address the status of nearly $17,000 Stack transferred to his then-wife. Although joint and several liability is inapplicable here, it may be reasonable to conclude that Stack also "enjoyed" the benefits of the funds that he sent to her. *See SEC v. Contorinis*, 743 F.3d 296, 302 (2d Cir. 2014) (noting that a defendant could be forced to disgorge not only his own gains, but also "the profits of such exploitation that he channeled to friends, family, or clients"). But the

No. 23-50327

SEC did not make allegations regarding this issue. The district court should address this issue on remand.

## CONCLUSION

For these reasons, we REVERSE and REMAND. On remand, the district court should recalculate a proper disgorgement award plus interest limited to the funds that Stack received and benefited from.