### In re BKS PROPERTIES, INC., et al., Plaintiffs,

v.

### Gaston A. SHUMATE, Defendant.

### No. 3:97–MC–105–X.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 15, 2002.

---

Robert L. Russell Bush, Attorney at Law, Bush & Morrison, Arlington, TX, David H. Roberts, Attorney at Law, Law Office of David H. Roberts, Dallas, TX, for plaintiffs.

Gaston A. Shumate, Dallas, TX, pro se.

## ORDER

KENDALL, District Judge.

The Court has considered the motions to hold Gaston A. Shumate in contempt of court and the report and recommendation of the United States Bankruptcy Court. Based on the recommendation of the United States Bankruptcy Court,

**IT IS ORDERED** that the reference to the United States Bankruptcy Court of June 8, 2001, to the extent that it directed the Bankruptcy Court to determine the contempt motion, is **WITHDRAWN**;

■ **IT IS FURTHER ORDERED** that Gaston A. Shumate is in civil contempt for his knowing and deliberate violations of the order entered by the United States Bankruptcy Court on October 29, 1997, adopted by this Court on November 12, 1998, and affirmed by the United States Court of Appeals for the Fifth Circuit on August 10, 1999.

■ **IT IS FURTHER ORDERED** that Gaston A. Shumate remedy the civil contempt by:

1. Paying BKS Properties, Inc., and Bernadine Kay Shirley $31,128.70, plus interest of 5.35% per annum, as directed by the bankruptcy court order of October 29, 1997.

2. Paying Peter Bartholow, Victoria Bartholow, Theodore Bartholow, and Molly Bartholow $38,852.50, plus interest of 5.35% per annum, as directed by the bankruptcy court order of October 29, 1997.

3. Paying Peter Bartholow, Victoria Bartholow, Theodore Bartholow, and Molly Bartholow $24,040.86, plus interest from the date of entry of this order, for the

costs and expenses incurred as a result of Shumate's continued contemptuous acts.

4. Paying the probate estate of Henry C. Seals, deceased, $7,000, plus interest from the date of entry of this order, for the costs and expenses incurred as a result of the continued contemptuous acts.

5. Paying First American Title Insurance Company of Texas $15,000, plus interest from the date of entry of this order, for the costs and expenses incurred as a result of the continued contemptuous acts.

6. Paying Continental Casualty Company $12,506, plus interest from the date of the entry of this order, for the costs and expenses incurred as a result of the continual contemptuous acts.

7. That Shumate be incarcerated until he pays the sanctions enumerated in paragraphs one through six above.

**IT IS FURTHER ORDERED** that Shumate's incarceration be suspended contingent upon Shumate not commencing any judicial or administrative proceeding against Peter Bartholow, Victoria Bartholow, Theodore Bartholow, Molly Bartholow, BKS Properties, Inc., Bernadine Kay Shirley, Henry C. Seals, the probate estate of Henry C. Seals, deceased, First American Title Insurance Co. of Texas, Benjamin Knittel, Continental Casualty Co., Scott Mooring, Blackmon Mooring, Inc., BMS Enterprise, Inc., or Nancy S. Miller, or their attorneys. If Shumate should commence any judicial or administrative proceeding against these persons, then the suspension would cease and the court would enter an order of confinement until Shumate purges the contempt.

**IT IS FURTHER ORDERED** that the clerk of the district court and the clerks of all other courts not accept for filing any pleading or paper filed by Gaston A. Shumate until he pays the above sanctions. This prohibition shall not apply to an appeal of this contempt order to the United States Court of Appeals for the Fifth Circuit. In the event a state court accepts a pleading from Shumate, the matter should be removed to federal court, transferred to the District Court for the Northern District of Texas, Dallas Division, and sua sponte dismissed with prejudice. In the event a federal court accepts a pleading from Shumate, the matter should be transferred to the District Court for the Northern District of Texas, Dallas Division, and sua sponte dismissed with prejudice.

### REPORT AND RECOMMENDATION TO DISTRICT COURT

FELSENTHAL, Bankruptcy Judge.

By order entered June 8, 2001, the United States District Court referred the above-styled contempt proceeding to United States Bankruptcy Judge Steven A. Felsenthal for hearing, if necessary, and for determination. 28 U.S.C. § 157. By order entered June 21, 2001, the court issued an order to show cause compelling Gaston A. Shumate to show cause on July 10, 2001, at 1:30 p.m., why he should not be held in civil contempt of court for violating prior final orders of a United States Court. If found in contempt, then Shumate had to establish why he should not be incarcerated until he purges the contempt. The court directed counsel for the movants to serve the order to show cause on Shumate on behalf of the court. Counsel for the movants served Shumate.

On June 22, 2001, Henry C. Seals, the Chapter 7 trustee, and the probate estate of Henry C. Seals, deceased, moved to join in the motion for contempt. On July 10, 2001, First American Title Insurance Company of Texas moved to join in the motion for contempt. On July 24, 2001, Continental Casualty Company moved to join in the motion for contempt. The court granted

all three joinder motions. After several continuances, the court conducted the show cause hearing on October 23, 2001, and January 3, 2002.

## Motion to Proceed In Forma Pauperis and Motion for Appointment of Counsel

An indigent defendant has the right to a court-appointed attorney in a civil contempt proceeding if he can be incarcerated. *Ridgway v. Baker*, 720 F.2d 1409 (5th Cir.1983). The order to show cause entered June 19, 2001, directs, in the event the court finds Shumate in civil contempt, that Shumate show cause why he should not be incarcerated until he purges the contempt. On August 2, 2001, Shumate filed motions to proceed in forma pauperis and for the appointment of an attorney. The court provided forty-five days for formal discovery from Shumate regarding his ability to retain counsel. Shumate subsequently provided either cursory or incomplete answers to interrogatories and requests for production of documents. After conducting an evidentiary hearing on the motions, the court finds that Shumate has the ability to pay for counsel to represent him on this contempt proceeding.

Shumate has obtained a discharge within the past seven years. Shumate has monthly income of approximately $1,900, which is sufficient to pay his monthly living expenses. He has no dependants.

Shumate owns a house that he values at $250,000, subject to tax liens in the approximate amount of $6,000. The tax rolls appraise the property at $241,780. While the house may be shielded from Shumate's creditors under Texas law, the equity in Shumate's home may be considered when determining his financial status. *See SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 76 (5th Cir.1993), remanded to 872 F.Supp. 1541 (N.D.Tex.1994) (adopting magistrate's findings, conclusions, and recommendations that defendant's home be considered by the court when determining his financial ability to pay a disgorgement order). Shumate may use his equity in the house to retain counsel. Therefore, Shumate may not obtain publicly funded counsel when he has an asset worth approximately $240,000 that may be used to pay for his contempt defense.

Shumate is the sole beneficiary of a trust created by his mother's will. He has provided only an incomplete copy of the will and no separate trust document. Neither Shumate nor the trustee, William Weston, Jr., could describe the trust's initial corpus, but both testified that the trust had been depleted several years ago. Neither could testify about the original value of the trust's assets or their disposition.

Moreover, within his responses to interrogatories and requests for production of documents, Shumate suggested that he owns property outside of the United States. Specifically, in response to an interrogatory, Shumate stated that assets outside of the United States were subject to unpaid storage fees. He also referenced an old boat and an old automobile, which may have been vandalized. Shumate further referenced the laws of France and Switzerland, thereby suggesting he had property in those countries. By failing to provide specific information about property owned outside the United States, Shumate must be deemed to have waived his requests to proceed in forma pauperis and for the appointment of counsel.

Therefore, the court concludes that Shumate has the ability to retain counsel if he so chooses. The court further finds that by not fully disclosing his assets, Shumate has otherwise waived his requests. Therefore, the court recommends that the district court deny the motions.

## Contempt

The court refers the district court to the memorandum opinion and order entered October 29, 1997, in *BKS Properties, Inc., et al. v. Gaston A. Shumate, et al.*, adv. proc. no. 396–3660. *See* attached copy. The memorandum opinion describes the history of this contempt dispute and contains the governing injunctions issued by this court. On October 29, 1997, the court found Shumate in civil contempt of court for his knowing and deliberate violations of the court's order entered September 30, 1994, in *Shumate v. Miller*, adv. proc. no. 394–3434. Pursuant to the order entered October 29, 1997, the court permanently enjoined Shumate from litigating against BKS Properties, Inc., and Bernadine Kay Shirley and against Peter and Victoria Bartholow and Theodore and Molly Bartholow except as pertains to the administration of the Shumate bankruptcy case, which litigation could only be commenced in the Western District of Texas. Further, the court permanently enjoined Shumate from initiating any judicial proceeding concerning the real property located at 4500 Westway, Highland Park, Texas. This injunction also prohibited Shumate from either filing or threatening to file any legal action, administrative action or complaint against the parties, as well as their attorneys. Although the permanent injunction did not apply to issues concerning the post-bankruptcy petition administration of the Shumate bankruptcy estate, the court enjoined Shumate from commencing litigation pertaining to bankruptcy administration issues in any court other than the Bankruptcy Court for the Western District of Texas.

Pursuant to Bankruptcy Rules 9020 and 9033(b), Shumate sought review in the district court. By an order entered November 12, 1998, the United States District Court for the Northern District of Texas, the Hon. Joe Kendall presiding, adopted the bankruptcy court's findings and conclusions. Subsequently, the United State Court of Appeals for the Fifth Circuit, by an opinion entered August 10, 1999, affirmed the district court's judgment.

On April 17, 2001, Shumate filed a complaint in state court against First American Title Insurance Co. of Texas, Benjamin Knittel, Molly Bartholow, Victoria Bartholow, Peter Bartholow, T.O. Bartholow, Jr., Nancy S. Miller, Henry Seals Trustee, Henry Seals Estate, deceased, Continental/CNA Casualty Co., Scott Mooring, Blackmon Mooring, Inc., and BMS Enterprise, Inc. The law suit, filed pro se, seeks damages for contempt stemming from activities regarding 4500 Westway, Ltd.

Because Henry Seals had acted as the Chapter 7 trustee of the Shumate bankruptcy estate, Shumate named Seals and his probate estate in his complaint. Shumate also named Continental Casualty Co., believing that it had issued Seals' trustee's bond. Moreover, because it had issued title insurance on 4500 Westway, Shumate named First American Title Insurance Co. in his complaint. As the Chapter 7 trustee, Seals implemented a settlement that conveyed any interest that Shumate had in the property, or in entities that may have claimed an interest in the property, to the Bartholows and entered releases. At the show cause hearing, Shumate conceded that he filed the suit to recover rental income from 4500 Westway that he claims had been wrongly diverted from him or his entities.

Shumate's lawsuit contravenes the October 29, 1997, injunctions. First, Shumate's state court lawsuit violates the injunction not to initiate any judicial proceeding concerning 4500 Westway. Second, Shumate's lawsuit violates the injunction not to commence litigation claiming any right,

title or interest in 4500 Westway. Third, the suit violates the injunction not to commence litigation against the Bartholows concerning 4500 Westway. Finally, Shumate's suit violates the injunction which requires that Shumate file litigation concerning the administration of his bankruptcy case in the Western District of Texas.

Shumate's contravention of the October 29, 1997, court order did not occur through either mistake or happenstance. Rather, Shumate has knowingly and deliberately violated the permanent injunctions. Shumate testified that he understood and had virtually memorized the order. Shumate further testified that no one had compelled him to commence new litigation in violation of the order. To the contrary, Shumate conceded that he had commenced the litigation of his own free will.

Shumate conceded and acknowledged that his complaint against Seals pertained to the administration of his bankruptcy estate. Therefore, Shumate knowingly and deliberately violated the injunction requiring that litigation concerning the administration of his bankruptcy case be filed in the Western District of Texas.

On June 6, 2001, Shumate filed a complaint in the United States District Court for the Northern District of Texas against the same parties that he had sued in the state court. He also added BKS Properties, Inc., and Bernadine Kay Shirley to the complaint. In the federal court complaint Shumate requested a declaratory judgment concerning a perceived conflict between the orders of the bankruptcy courts in the Northern and Western Districts of Texas. As described in the complaint, Shumate collaterally attacked the prior orders of this court and sought declaration to enable him to pursue litigation regarding the property at 4500 Westway.

The federal complaint contravenes the same injunction provisions violated by Shumate's state court litigation. In addition, by filing suit against BKS Properties and Shirley, he also violated the injunction that protected them from any litigation commenced by Shumate.

## Shumate's Defenses

Shumate contends that because he is subject to conflicting jurisdictional decisions by the bankruptcy courts of the Northern and Western Districts of Texas, he can file suit to resolve the contrary opinions. Shumate filed a lawsuit against Nancy S. Miller in the 44th Judicial District Court of Dallas County, Texas, in 1989. That action had been removed to the Bankruptcy Court for the Western District of Texas. An action removed from state court must be removed to the federal district in which the action had been pending. Consequently, the action should have been removed to the Northern District of Texas. Because the removed action was related to the Shumate bankruptcy case pending in the Western District of Texas, the removing parties could have moved to transfer venue to the Western District of Texas. Because the action had been improperly removed to the Western District of Texas, by an order entered July 19, 1993, the bankruptcy court of the Western District of Texas remanded the action to state court.

During a hearing on a motion by Seals, the Chapter 7 trustee, to settle all claims and causes of action that the bankruptcy estate had against the Bartholows, the bankruptcy court observed that causes of actions belonging to a corporation or partnership did not constitute property of the Shumate bankruptcy estate. But, Shumate's ownership interest in such entities constituted property of the estate. The court noted that the trustee could exercise his corporate or partnership governance

rights as equity holder to have the entity release and settle its claims. At the hearing, the court merely questioned whether Seals had taken those corporate governance steps to release causes of action belonging to the entities that Shumate owned. The court continued the hearing on the settlement to allow the parties an opportunity to draft settlement documents to address that matter, as well as other matters.

Shumate invokes the bankruptcy court's corporate governance observations at that hearing and the remand order to contend that the bankruptcy court in the Western District authorized his prosecution of the litigation involving 4500 Westway in state court.

Any interest that Shumate had in 4500 Westway or in any partnership or corporation that claimed an interest in 4500 Westway became property of Shumate's bankruptcy estate. Seals, the Chapter 7 trustee of the Shumate estate, entered a compromise and settlement that effectively resolved the litigation over 4500 Westway. In the settlement, the trustee released all claims stemming from those disputes. Seals transferred whatever interest Shumate had in the property and whatever interest he had in the partnerships to the Bartholows. That transfer extinguished any interest that Shumate or his bankruptcy estate had in the property or in a legal entity that claimed an interest in the property.

At the hearing, referenced above, Shumate told the bankruptcy court that all causes of action concerning the property had accrued prior to his bankruptcy petition. Since the events giving rise to his property dispute with the Bartholows occurred pre-petition, Shumate effectively conceded that all disputes regarding the property pre-dated the bankruptcy case. In the settlement, the bankruptcy estate

entered broad releases of any claims, including the remanded litigation, that Shumate had against either the Bartholows or others concerning the property.

The bankruptcy court approved the settlement by an order entered August 19, 1992. Thereafter, both the United States District Court for the Western District of Texas and the Fifth Circuit affirmed that approval. As a result, Shumate no longer had any interest in the property, the partnership, the corporations or the causes of action.

The Bartholows again removed the state court litigation to federal court, but, this time correctly to the Northern District of Texas, whereupon the district court's order of referral sent the matter to this court, as it was related to the bankruptcy case. The defendants then moved to transfer the litigation to the Western District of Texas. But, this court concluded that, due to the settlement, the complaint should be dismissed without the need to transfer venue. Consequently, by an order entered September 30, 1994, this court held "that the complaint is DISMISSED WITH PREJUDICE to all matters within the ambit of the settlement order entered by the United States Bankruptcy Court for the Western District of Texas but without prejudice to issues pertaining to the post-bankruptcy administration of the bankruptcy estate. As to case administration issues, if any, Gaston A. Shumate is enjoined from commencing litigation in any court other than the United States Bankruptcy Court for the Western District of Texas."

Shumate sought district court review of that order. If Shumate contended that this court had misapplied the settlement order, then he would have had to present that issue to the district court. By an order entered April 5, 1996, the district court affirmed the dismissal order. Once

again Shumate pursued his appeal to the Fifth Circuit. On January 29, 1997, the Fifth Circuit affirmed the district court.

This court's determination that the settlement agreement approved by final and binding order of the bankruptcy court precluded further litigation regarding 4500 Westway is itself final and binding. Shumate's contention of conflicting jurisdictional determinations lacks arguable merit. Consequently, Shumate cannot invoke that argument to justify his knowing and deliberate violation of permanent injunctions entered by this court, adopted by the district court, and affirmed by the Fifth Circuit.

Shumate next contends that this court should not hold him in contempt because the closing of his bankruptcy case prevented him from returning to the bankruptcy court which, in turn, enabled him to resume litigation in state court. Upon the closing of a bankruptcy case, unadministered assets of the bankruptcy estate revert to the debtor. Also, by an order entered October 29, 1997, the bankruptcy court abandoned certain assets to Shumate. But, any interest that Shumate had in 4500 Westway and any interest that he had in a partnership that may have claimed an interest in 4500 Westway had been fully administered by the bankruptcy estate with a final and binding order entered August 20, 1992, which Shumate may neither ignore nor violate. Furthermore, any interest that Shumate had in litigation regarding 4500 Westway had been released and, thus, fully administered. As discussed above, the district court and the Fifth Circuit affirmed the bankruptcy court's approval of the settlement. The district court and the Fifth Circuit affirmed this court's application of the settlement with the resulting injunction. The abandonment and the subsequent closing

of the bankruptcy case does not alter that result.

This court enjoined Shumate from litigating bankruptcy administration issues in any court other than the Bankruptcy Court for the Western District of Texas. The injunction placed Shumate precisely where he should be; that is, before the court that presided over the administration of his bankruptcy case. However, Shumate contends that the closing of the case prevented compliance with that injunction. First, he is wrong. The Bankruptcy Code provides that: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Shumate, therefore, could have moved the bankruptcy court to reopen his case to allow him to pursue issues relating to Seals' handling of his estate. The bankruptcy court would have then considered whether cause existed to reopen the case. Second, even if Shumate was correct, his remedy would have been to request relief from the injunction, but not to knowingly and deliberately violate the injunction.

Shumate also contends that because the injunction that prohibits Shumate from commencing bankruptcy case administration litigation in any court other than the Bankruptcy Court for the Western District of Texas is too vague, he cannot be found in contempt for violating the injunction. First, the court again observes that Shumate did not prevail on his appeals of the injunction. Second, his argument is frivolous. Shumate knew that the litigation involved bankruptcy administration issues. Shumate commenced litigation against Seals, and his insurer, precisely because of Seals' actions as trustee in the Shumate bankruptcy estate.

In his long-running dispute with the Bartholows concerning 4500 Westway, Shumate believes that he has been

wronged. In the show cause hearing, this court allowed Shumate considerable latitude to testify about his view of the dispute. But, Shumate's unhappiness with the result of his years of litigation with the Bartholows regarding the property does not constitute an excuse to violate binding injunctions, issued by a federal court, and affirmed on appeal. .

This court had jurisdiction over the adversary proceeding no. 394–3434, which was related to Shumate's bankruptcy estate. 28 U.S.C. § 1334. As explained in the attached memorandum opinion, this court had jurisdiction over adversary proceeding no. 396–3660. Those proceedings resulted in the injunctions which are the subject of this contempt litigation. The injunction issued in adversary proceeding no. 396–3660 was adopted by the district court. The district court has jurisdiction to issue any order and to conduct contempt proceedings to enforce its orders.

Accordingly, Shumate has failed to establish any reason that would relieve him of his contemptuous behavior.

For the second time, this court finds that Gaston A. Shumate is in civil contempt of this court, this time for his knowing and deliberate violations of this court's order entered October 29, 1997, in adversary proceeding no. 396–3660.

### Sanctions

The efficacy and legitimacy of the judicial system, and hence the rule of law, compels that courts enforce final and binding injunctions. As discussed in the attached opinion, knowing and deliberate violations of court orders must be sanctioned by contempt.

Although he professes otherwise, Shumate places himself above the law. Shumate believes that if he disagrees with an order, then he may ignore it. Shumate has convinced himself that several orders

of this court lack validity, even though they have been affirmed by the district court and the Fifth Circuit. Even though affirmed by the district court and the Fifth Circuit, Shumate also believes that the order approving the settlement involving 4500 Westway lacks validity. Shumate has become so obsessed with his dispute with the Bartholows that he will neither accept nor adhere to the injunctions issued by this court. While the federal courts cannot and need not address Shumate's dissatisfaction with the result of the litigation with the Bartholows, the courts must compel Shumate to comply with its binding orders.

Shumate knowingly and deliberately violated the court's order entered September 30, 1994, in adversary proceeding no. 394–3434. Shumate's actions resulted in the first civil contempt finding. To remedy that contempt, the court imposed monetary sanctions on Shumate to compensate the aggrieved parties for the costs unnecessarily incurred because of Shumate's contemptuous acts. In the order entered October 29, 1997, the court awarded BKS Properties, Inc., and Bernadine Kay Shirley $31,128.70 to compensate them for their costs and expenses incurred in that litigation. The court also awarded Peter Bartholow and Victoria Bartholow, and Theodore Bartholow and Molly Bartholow $38,852.50 to compensate them for their costs and expenses incurred in that litigation. The court also issued additional injunctions discussed above. See order entered October 29, 1997, in adversary proceeding no. 396–3660. Shumate has now knowingly and deliberately violated that order. Moreover, he has failed to pay the sanctions necessary to make the aggrieved parties whole. Apparently monetary sanctions and prohibitive injunctions have no effect on Shumate. This court has already entered orders dismissing the state

and federal court law suits commenced in violation of the injunctions. Therefore, Shumate cannot purge his contempt by withdrawing the litigation. Consequently, the court must recommend that, until Shumate purges his civil contempt, the sanction include incarceration.

If the sole means to purge the contempt is by incarceration until monetary sanctions have been paid, if the contemnor has an ability to pay, and if enforcement of the final and binding court order is in the public interest, then the court may so act. *See International Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Quilling v. Funding Resource Group*, 227 F.3d 231, 235 (5th Cir.2000). The court does not recommend incarceration to compel the payment of a money judgment. That would not be an appropriate exercise of judicial power. 28 U.S.C. § 2007(a) (2001); Tex. Const. art I, § 18. Rather, the court recommends incarceration to purge a contempt by compensating persons for expenses unnecessarily incurred solely because Shumate has knowingly, and deliberately, out of an exercise of his free will, chosen to file law suits in direct violation of final and binding federal court injunctions, thereby undermining the integrity of the judicial process, while financially harming the persons protected by the court's injunctions.

Shumate must purge the contempt by compensating persons protected by the injunctions. The court recommends that the district court confine Shumate until he purges the civil contempt by compensating the parties to this litigation for the costs that they incurred as a direct result of his contemptuous actions.

Shumate argues that he cannot be incarcerated to force the collection of money judgments. As previously discussed, Fifth Circuit case law does not preclude incarceration to compel payment of a sanction if the injunctions being enforced are in the public interest. Courts have the authority to protect persons from being subjected to constant litigation, and the public expects that protection. The public also has an expectation that persons must either comply with injunctions or face contempt. In this case, the injunctions protect persons from continually facing litigation over matters finally resolved. Therefore, the failure to apply a meaningful contempt sanction would undermine the public's confidence in the efficacy of injunctions, and thereby in the rule of law. Shumate has left the court with few alternatives. He has failed to comply with prior injunctions. He seems unfazed by monetary sanctions. If all else fails, then Shumate should be incarcerated to coerce him to remedy his contemptuous behavior. The remedy would properly include paying the costs and expenses that the aggrieved parties incurred because Shumate knowingly and deliberately violated binding orders of this court, the court having already dismissed the law suits Shumate commenced.

Shumate has the ability to pay the contempt sanctions. He concedes that he has a house with an equity value of at least about $240,000. While his house may be exempt from collection actions taken by his creditors, Shumate has the right, and the ability, to use the equity in his house to purge his contempt. The Fifth Circuit has recognized that federal courts may consider the value of assets, even if such assets are exempt from a creditor's reach, in assessing sanctions for contempt. *AMX Int'l*, 7 F.3d at 76. Shumate chose, out of an exercise of his own free will, to violate federal court orders. The court further notes that Shumate did not provide complete interrogatory answers regarding assets, apparently located in France and

Switzerland, and did not provide documentary evidence regarding those assets. Shumate may well have assets, in addition to his house, with which to purge his contempt. Therefore, since Shumate has not established that he lacks the ability to pay the sanction, he may now draw on his own assets to purge the resulting contempt. Shumate must finally be forced to learn that "[l]ike any other pastime, recreational litigation has its price." *In the Matter of United Markets Int'l, Inc.*, 24 F.3d 650, 656 (5th Cir.1994).

In the order of October 29, 1997, this court directed that, until he pays the sanctions awarded, the clerk of the bankruptcy court not accept for filing any pleading or paper filed by Shumate. As a matter of comity and sound judicial administration, this court requested that all courts, state and federal, recognize and honor that order. As a further sanction, this court recommends that the district court enter a similar directive to the clerk of the district court, as well as to the clerks of all courts, not to accept any pleading or paper filed by Shumate until he pays the sanctions. *Vinson v. Heckmann*, 940 F.2d 114, 116–17 (5th Cir.1991); *See also* Tex. Civ. Prac. & Rem.Code. Ann. § 11.101(a) (Vernon 2001). The order should further direct that if Shumate files either a paper or pleading in violation of this order, that a named defendant immediately remove the litigation to federal court, and that the federal court immediately sua sponte dismiss the matter with prejudice.

The court is mindful of Shumate's age. Shumate is seventy-seven years old. The court is also aware of Shumate's claims of health problems, including claims of hearing difficulties and depression. The court provided Shumate with hearing enhancement technological services at the show cause hearing. However, Shumate declined to use the device. The court notes that the applicable injunctions and decisions of the appellate courts were in writing, with full written explanations. The court further observes that Shumate often heard in court what he wanted to hear. Shumate provided no evidence to support his claim of depression. Shumate also presented no evidence indicating that he lacked the mental capacity to understand the injunctions. But, the court observed that Shumate often rambled in his testimony and that he often failed to provide coherent responses.

The court is concerned about incarcerating a seventy-seven year old person for misuse of the courts, in violation of binding injunctions. The court must weigh the hardship of incarceration against other remedies, as Shumate placed himself in this predicament by commencing the state and federal court litigation. If Shumate would adhere to the injunctions and stop litigating against the aggrieved parties, then the court would leave the aggrieved parties to their own collection efforts for the recovery of their costs. But, if the injunctions and monetary sanctions have no effect on Shumate, then incarceration appears to be the court's only viable alternative.

The court has considered whether removal and dismissal by the district court of all litigation filed by Shumate against the aggrieved parties would effectively enforce the injunctions without the need for incarceration. The district court retains jurisdiction to enforce the contempt order. The district court could suspend the incarceration sanctions pending experience with the following procedure. The district court could direct that should a clerk of a state court accept a pleading from Shumate, despite the prohibition against filing and accepting such papers, the matter be removed to federal court, transferred to the District Court for the Northern Dis-

trict of Texas, Dallas division, and sua sponte dismissed with prejudice. The court could also direct that if filed in a federal court, the matter be transferred to the district court, Dallas division, and sua sponte dismissed with prejudice. Because of the directive to the clerk of the district court not to accept papers for filing from Shumate, the dismissals would be final and not subject to appeal. Through this process, the district court might effectively end Shumate's abuse of the court system and his violations of the injunctions without incarcerating him. Should the process prove ineffective, the court could then lift the incarceration suspension and proceed accordingly. The district court should not have to employ such machinations to effectuate injunctions, but, considering Shumate's age, the court may be inclined to explore that process as an alternative to incarceration.

In addition and similarly, the court could suspend the order of incarceration provided that Shumate commence no litigation against these parties or their attorneys. If Shumate violates that condition, then the suspension would cease and the court would implement the incarceration.

The Bartholows have requested that this court act as a gatekeeper, by requiring that Shumate seek leave of the bankruptcy court to commence any litigation or administrative process. *See* Tex. Civ. Prac. & Rem.Code. Ann. § 11.504 et seq. (Vernon 2001). Since Shumate has ignored prior injunctions, the court has no reason to conclude that Shumate would comply with a requirement to seek leave of this court before commencing litigation. Therefore, the mandatory withdrawal of state court proceedings with transfer and dismissal, with a conditional suspension of incarceration, would likely be more effective.

To avoid any issue concerning constitutional authority to incarcerate a person for civil contempt, this court recommends that the district court, not the bankruptcy court, issue the civil contempt order, impose the monetary remedy, and order the incarceration until the remedy has been paid.

In the alternative, should the district court conclude that incarceration should not be used to compel the payment of the monetary damages, then this court recommends that the district court direct the United States Justice Department to commence criminal contempt proceedings. The Justice Department could then prosecute Shumate and seek his incarceration as punishment for the repeated violations of binding federal court orders that have resulted in monetary damages to third persons.

### Recommendations

By an order entered June 8, 2001, the United States District Court referred the above-styled contempt proceeding to United States Bankruptcy Judge Steven A. Felsenthal for hearing, if necessary, and for determination. The bankruptcy court has conducted a hearing. The bankruptcy court has determined that Gaston A. Shumate must be found in civil contempt of court. But, because the sanction to purge the contempt may include incarceration unless or until Shumate compensates persons for the costs incurred by his contemptuous acts, the bankruptcy court recommends that the district court withdraw the reference and enter the contempt order and sanctions.

The bankruptcy court further recommends that the district court hold Gaston A. Shumate in civil contempt for his knowing and deliberate violations of the order entered by the bankruptcy court on October 29, 1997, adopted by the district court on November 12, 1998, and affirmed by the Fifth Circuit on August 10, 1999.

The bankruptcy court recommends that the district court compel Shumate to remedy the civil contempt by:

1. Paying BKS Properties, Inc., and Bernadine Kay Shirley $31,128.70, plus interest of 5.35% per annum, as directed by the order of October 29, 1997.

2. Paying Peter Bartholow, Victoria Bartholow, Theodore Bartholow, and Molly Bartholow $38,852.50, plus interest of 5.35% per annum, as directed by the order of October 29, 1997.

3. Paying Peter Bartholow, Victoria Bartholow, Theodore Bartholow, and Molly Bartholow $24,040.86, plus interest from the date of entry of the district court order, for the costs and expenses incurred as a result of Shumate's continued contemptuous acts.

4. Paying the probate estate of Henry C. Seals, deceased, $7,000, plus interest from the date of entry of the district court order, for the costs and expenses incurred as a result of the continued contemptuous acts.

5. Paying First American Title Insurance Company of Texas $15,000, plus interest from the date of entry of the district court order, for the costs and expenses incurred as a result of the continued contemptuous acts.

6. Paying Continental Casualty Company $12,506, plus interest from the date of the entry of the district court order, for the costs and expenses incurred as a result of the continual contemptuous acts.

7. That Shumate be incarcerated until he pays the sanctions enumerated in paragraphs one through six above.

Because of Shumate's age, the bankruptcy court further recommends that the district court suspend the incarceration requirement. However, this suspension would be contingent upon Shumate's not commencing any judicial or administrative proceeding against Peter Bartholow, Victoria Bartholow, Theodore Bartholow, Molly Bartholow, BKS Properties, Inc., Bernadine Kay Shirley, Henry C. Seals, the probate estate of Henry C. Seals, deceased, First American Title Insurance Co. of Texas, Benjamin Knittel, Continental Casualty Co., Scott Mooring, Blackmon Mooring, Inc., BMS Enterprise, Inc., or Nancy S. Miller, or their attorneys. If Shumate should commence any judicial or administrative proceeding against these persons, then the suspension would cease and the court would execute the confinement order until Shumate purges the contempt.

The bankruptcy court further recommends that the district court order the clerk of the district court and all other courts, to the extent permitted by the district court's authority, to not accept for filing any pleading or paper filed by Gaston A. Shumate until he pays the above sanctions. That prohibition should not apply to an appeal of the contempt order to the United States Court of Appeals for the Fifth Circuit. In the event a state court accepts a pleading from Shumate, the matter should be removed to federal court, transferred to the District Court for the Northern District of Texas, Dallas Division, and sua sponte dismissed with prejudice. In the event that a federal court accepts a pleading from Shumate, then the matter should be transferred to the District Court for the Northern District of Texas, Dallas Division, and sua sponte dismissed with prejudice.

The bankruptcy court recommends, in the alternative, that the district court direct the United States Attorney, on the court's behalf, to prosecute Gaston A. Shumate for criminal contempt for his continual, knowing, and deliberate violations of final and binding federal court injunctions,

which actions have financially harmed persons protected by the injunctions.

Respectfully submitted this 9th day of January, 2002.